**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                       **v.**          **09-CR-128A(Sr)**

**MALIK SAMUEL, a/k/a "SIZZLES",**

        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6.

## PRELIMINARY STATEMENT

The defendant, Malik Samuel, is charged in a two-count Indictment with having violated Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Count 1) and the defendant also faces a forfeiture count (Count 2) pursuant to Title 18, United States Code, Sections 924(d) and 3665, and Title 28, United States Code, Section 2461(c). Dkt. #1.

Presently pending before this Court is the defendant's omnibus motion for discovery and motion to suppress physical evidence, statements made by the

defendant and "audiotape evidence." Dkt. ##4 and 11.[1]  This Court's Decision and Order on defendant's omnibus motion for discovery will be addressed and filed separately.  The government filed its response to the defendant's motion to suppress and omnibus motion for discovery on July 24, 2009 (Dkt. #7) and thereafter, the government filed an amended response on July 27, 2009 (Dkt. #8).[2]  Oral argument on the defendant's motions was held on September 9, 2009.  For the following reasons, it is recommended that defendant's motion to suppress physical evidence, statements made by the defendant and audiotape evidence be denied.

## **FACTS**[3]

On February 8, 2009, Buffalo Police Department officers, responding to a call concerning shots fired, observed the defendant operating a vehicle at a high rate of speed and "fleeing from the location of the shooting." Dkt. #8, p.2.  The Buffalo Police Department officers pursued the defendant who briefly stopped the vehicle at the intersection of Bailey and Walden Avenues.  *Id*.  As Buffalo Police Department

---

[1] The Court notes that the defendant first filed his motion seeking suppression and discovery on July 17, 2009 (Dkt. #4) and thereafter, filed the identical motion on August 13, 2009 (Dkt. #11).  For purposes of clarity and consistency, this Court will refer only to Dkt. #11 in this Report, Recommendation and Order and the forthcoming Decision and Order with respect to defendant's omnibus motion for discovery.

[2] The only difference that the Court can discern between the government's original response (Dkt. #7) and the government's amended response (Dkt. #9) is the inclusion of the following exhibits: a February 8, 2009 Felony Complaint; a February 8, 2009 Misdemeanor/Violation Information; and Notice to Defendant of Intention to Offer Evidence at Trial.  *Compare* Dkt. ##7 and 9.

[3] The facts herein are taken from the Amended Government's Response to the Defendant's Omnibus Pretrial Motions (Dkt. #8).

Lieutenant Kwiatkowski approached the vehicle, he observed what appeared to be a handgun in the defendant's right hand. *Id*. The defendant then drove off at a high rate of speed, nearly striking Buffalo Police Department Officer Cieply's patrol car. *Id*. The defendant was subsequently issued a speeding ticket for traveling 75 miles per hour in a 30 miles per hour zone. Dkt. #8-2, p.4. While the Buffalo Police Department officers continued to pursue the defendant's vehicle, Lieutenant Kwiatkowski and Lieutenant Bartoszewicz observed the defendant reach out the window and throw the handgun over the top of the vehicle with his left hand, nearly striking Lieutenant Bartoszewicz's patrol car. Dkt. #8, p.2. The defendant continued driving at a high rate of speed, but eventually stopped at 97 Gatchell Road, Buffalo, New York where he was arrested. *Id*. Buffalo Police Department Officer Crowley recovered the loaded weapon with one spent round in the area where the officers observed the defendant throw it from the vehicle. *Id*. The defendant was given *Miranda* warnings by Buffalo Police Department Officer Alvarez at 97 Gatchell, and thereafter voluntarily stated, "I plead the fifth, I just did six years, I know what's up." *Id*. Later at the police station, Lieutenant Kwiatkowski asked the defendant several questions and the defendant responded, "I'm not trying to be disrespectful, but I'm done talking. I'll just take my time and roll. I'm not a snitch or giving any statements." *Id*. at pp.2-3.

On April 28, 2009, a Federal Grand Jury sitting in the Western District of New York returned a two-count Indictment charging the defendant with the knowing possession of a firearm after having been convicted of a felony. Dkt. #1. Count 2 of the

Indictment seeks the forfeiture of the recovered semiautomatic handgun and ammunition. *Id*. Thereafter, defendant filed the instant motion to suppress statements, physical evidence and audiotape evidence. Dkt. #11. That portion of the defendant's motion seeking suppression states, in its entirety:

> 4. The defendant seeks suppression of any statements to governments intends to introduce against inasmuch as said statements were obtained in breach of his constitutional right. [sic]
>
> 5. The defendant seeks the suppression of any physical evidence the government intends to introduce as trial evidence inasmuch as it was obtained in breach of his constitutional rights.
>
> 6. The defendant seeks suppression of any audiotape evidence the government will use as trial evidence because it was obtained in breach of his constitutional rights.
>
> 7. Upon information and belief the government has not indicated that it possesses any statements, physical evidence, or audiotapes that it will use against the defendant.
>
> 8. The defendant however seeks leave to file supplementary affirmations and or affidavits to further outline the necessity for suppression hearings upon receipt of said items from the government.

Dkt. #11, ¶¶ 4-8. As the government states in its opposition to defendant's motion to suppress, the defendant fails to specifically identify any statements or items of physical evidence that he seeks to suppress. With respect to audio recordings, the government stated in its response that it received audio recordings from the Niagara County Jail and at the time it filed its response to the defendant's motion, it was in the process of duplicating the recordings to supplement the discovery already provided to the

defendant. Dkt. #8, pp.4-5. Notwithstanding the foregoing, during the September 9, 2009 oral argument, counsel for the defendant revealed that the basis for his motion to suppress and request for a suppression hearing was that the initial pursuit of the defendant was unlawful and therefore, anything that occurred after the pursuit was "fruit of the poisonous tree" and must be suppressed, including, evidence recovered and statements made.

## DISCUSSION AND ANALYSIS

As quoted above, the defendant's entire motion to suppress consists of five, one-sentence paragraphs stating that he is seeking suppression of statements, physical evidence and "audiotape evidence." With the exception of these five sentences, the defendant offers nothing in support of his "motion to suppress." In fact, the defendant offers no explanation whatsoever of what statements, if any, he made that should be suppressed, what evidence, if any, should be suppressed and what audiotapes, if any, should be suppressed. Indeed, the Court infers from the government's response to defendant's motion that at the time the government filed its response to defendant's motion, he had not even been provided with copies of the audio recordings. Moreover, in support of his request for a suppression hearing, the defendant does not even offer an affidavit of someone with personal knowledge of the relevant facts sufficient to justify the need for a hearing. An argument supported by "[a]iry generalities, conclusory assertions" and inadmissable evidence is insufficient to create a genuine issue of fact necessitating an evidentiary hearing. *United States v Aiello*, 814 F.2d 109, 113-14 (2d Cir.1987); *United States. v. Solano,* 300 Fed. Appx. 83

(2d Cir. 2008).  On this basis alone, it is recommended that defendant's motion to suppress unspecified statements, unidentified evidence and "audiotape evidence" and request for a suppression hearing be denied.

In addition to the foregoing, counsel for the defendant revealed during the September 9, 2009 oral argument that he believed that the pursuit of the defendant by Buffalo Police Department officers was "unlawful" and accordingly, any evidence recovered and any statements made by the defendant, after the pursuit began was "fruit of the poisonous tree" and must be suppressed.  For the reasons set forth below, the defendant's theory is in direct conflict with well-settled United States Supreme Court, Second Circuit Court of Appeals and Western District of New York precedent.

In *California v. Hodari D.*, the Supreme Court of the United States considered whether a defendant who was being pursued by a police officer, but was not apprehended by the police officer until after he attempted to discard drugs, had been seized at the time the drugs were dropped.  499 U.S. 621 (1991).   Relying upon language in *Terry v. Ohio* stating that "a seizure occurs 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen,'" the defendant argued that the police officer's pursuit with the emergency lights flashing constituted a show of authority sufficient to constitute a seizure.  *Id.* at 625-26 (emphasis added), *quoting Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968).  Noting that "neither usage nor common-law tradition makes an *attempted* seizure a seizure," the

Supreme Court determined that a seizure does not occur if the subject does not yield. *Id.* at 626 & n.2. Thus, to constitute a seizure, "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority" is required. *Id.* at 626.

In reaching its decision, the Supreme Court recounted its decision in *Brower v. County of Inyo*, in which

> police cars with flashing lights had chased the decedent for 20 miles – surely an adequate "show of authority" – but he did not stop until his fatal crash into a police-erected blockade. The issue was whether his death could be held to be the consequence of an unreasonable seizure in violation of the Fourth Amendment. We did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that "show of authority" did not produce his stop.

*Hodari D.*, 499 U.S. at 628, *citing Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). It is clear, therefore, "that a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment," and that "[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833-44 & 845, n.7 (1998). Following the reasoning set forth in *Hodari D.* and in reliance on a Ninth Circuit decision, *United States v. Santamaria-Hernandez*, 968 F.2d 980 (9th Cir. 1992), this Court has previously found in *United States v. Swindle* (unreported decision), *aff'd*, 407 F.3d 562 (2d Cir. 2005) that where, as here, a defendant is being pursued by the police, the defendant had not been seized when he was observed discarding, in the case of *Swindle*, a knotted off clear sandwich bag containing crack cocaine. Here, while the defendant

was being pursued, Buffalo Police Department officers observed him discard a handgun out the window and over the top of the car. As in *Swindle*, this Court concludes that the handgun was abandoned by the defendant while he was being pursued by the police and was thereafter, lawfully recovered by the police and should not be suppressed.

The decision to stop an automobile is reasonable under the Fourth Amendment to the United States Constitution when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 819 (1996). "When an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle." *United States v. Dhinsa*, 171 F.3d 721 (2d Cir. 1998).

Moreover, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (police officer authorized to arrest driver where neither she nor her children were wearing seat belts); *see Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (police officer authorized to arrest driver for speeding); *New York v. Class,* 475 U.S. 106, 118 (1986) (formal arrest permissible for a traffic offense under New York law); *United States v. Scopo*, 19 F.3d 777, 781-782 (2d Cir.) (probable cause to stop

and arrest driver where police officers observed driver's failure to signal while changing lanes), *cert. denied,* 513 U.S. 877 (1994); *see also* New York Criminal Procedure Law § 140.10 (police officer may arrest a person without a warrant for any offense when officer has reasonable cause to believe that such person has committed such offense in his presence); New York Vehicle & Traffic Law § 155 (for purposes of arrest without a warrant, a traffic infraction shall be deemed an offense). Thus, Lieutenant Kwiatkowski's observation of the defendant driving off at a high rate of speed in violation of New York's Vehicle and Traffic Law, standing alone, provided probable cause to arrest the defendant. However, as described above, Buffalo Police Department officers pursued the defendant and during this pursuit observed the defendant discard a handgun out the window and over the top of the car he was driving.

Unprovoked flight upon noticing police is pertinent in determining reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).

> Headlong flight - whenever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such . . . . [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
>
> \* \* \*
>
> Flight, by its very nature, is 'not going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).

Here, the record before this Court is devoid of any facts which would give this Court any reason to depart from well-settled legal authority, including, its own prior decision in *Swindle*, *supra*. Not only does the defendant fail to offer any support for his theory of suppression or even to justify an evidentiary hearing, but the facts before this Court conclusively establish that the observations of Lieutenant Kwiatkowski as he approached the vehicle, *to wit*, what appeared to be a handgun in the defendant's right hand, coupled with the defendant's unprovoked flight at a high rate of speed, the defendant's failure to heed the officers' assertion of authority and the observation of Lieutenant Kwiatkowski and Lieutenant Bartoszewicz of the defendant reaching out the window and throwing a handgun over the top of the vehicle with his left hand, are more than sufficient to establish reasonable suspicion to pursue the defendant and that the defendant's subsequent seizure (arrest) was supported by probable cause. In addition, because the defendant had not been "seized" at the time he discarded the handgun, the handgun was abandoned while he was being pursued and lawfully recovered by the police. Accordingly, I recommend that the defendant's motion to suppress physical evidence be denied.

In addition, the defendant further argues that by reason of the Buffalo Police Department officers' illegal seizure of him, his subsequent statements are "fruit of the poisonous tree" are therefore, subject to suppression. As noted above, the defendant does not specify which statements, if any, he seeks to have suppressed. Indeed, based on the record before this Court, this Court is aware of only the following two statements made by the defendant following his arrest. First, after having been

given *Miranda* warnings by Buffalo Police Department Officer Alvarez at 97 Gatchell, the defendant voluntarily stated, "I plead the fifth, I just did six years, I know what's up." Dkt. #8, p.2. Second, at the police station, Lieutenant Kwiatkowski asked the defendant several questions and the defendant responded, "I'm not trying to be disrespectful, but I'm done talking. I'll just take my time and roll. I'm not a snitch or giving any statements." *Id*. at pp.2-3. For the reasons explained above, there is no basis whatsoever to support a finding that the defendant's statements given to law enforcement after he was given *Miranda* warnings should be suppressed as "fruit of the poisonous tree." Moreover, the police pursuit of the defendant was supported by reasonable suspicion and the defendant's subsequent seizure was supported by probable cause. Accordingly, this Court recommends that defendant's motion to suppress statements be denied.

Finally, that portion of the defendant's motion to suppress the audio recordings or "audiotape evidence" is wholly unsupported by any factual or legal basis. In fact, as the government points out in its response to the defendant's motion to suppress, at the time the motion was made the defendant had not yet been provided with the copies of the audio recordings from the Niagara County Jail. Moreover, the government stated in its response, "[i]n light of the fact that the defendant has not had sufficient opportunity to review such recordings, the government would not object to an amended scheduling order to allow the defendant time to review the recordings and determine whether there may be specific grounds for suppression." Dkt. #8, pp.4-5. Because the defendant neither availed himself of the opportunity to request an

amended scheduling order nor elaborated on the basis for his motion to suppress the "audiotape evidence," this Court lacks any basis to grant defendant's motion to suppress "audiotape evidence." Accordingly, this Court recommends that defendant's motion to suppress "audiotape evidence" be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*,

474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:	Buffalo, New York
	April 7, 2010

		*s/ H. Kenneth Schroeder, Jr.*
		**H. KENNETH SCHROEDER, JR.**
		**United States Magistrate Judge**