**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        Plaintiff,

                    v.        09-CR-128A(Sr)

**MALIK SAMUEL, a/k/a "SIZZLES",**

        Defendant.

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6.

## PRELIMINARY STATEMENT

The defendant, Malik Samuel, is charged in a two-count Indictment with having violated Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Count 1) and the defendant also faces a forfeiture count (Count 2) pursuant to Title 18, United States Code, Sections 924(d) and 3665, and Title 28, United States Code, Section 2461(c). Dkt. #1.

As a threshold matter, the Court notes that the trial of this matter was scheduled to begin on June 22, 2010 before United States District Judge Richard J. Arcara. Following the final pretrial conference held on June 21, 2010, Judge Arcara referred this matter to the undersigned for the limited purpose of hearing and reporting

upon a discrete issue raised by the defendant in his motion *in limine*. More specifically, presently pending before this Court is that portion of the defendant's motion *in limine* seeking to preclude the government from offering at trial any alleged statements made by the defendant to law enforcement after the defendant had invoked his right to remain silent. Dkt. #46, pp.1-4. This Court directed the government to file its response to the instant motion *in limine* no later than 5:00 p.m. on June 28, 2010. Dkt. #47. Consistent with this Court's June 21, 2010 Order, the government filed its response on June 28, 2010. Dkt. #48. In addition, the Court directed the parties to stipulate to a set of facts not in dispute for purposes of oral argument on the instant motion. On June 28, 2010, the government provided defense counsel with a proposed stipulation of facts. On July 1, 2010, the government filed a Memorandum (Dkt. #49), wherein it advised the Court, *inter alia*, that as of July 1, 2010 at 4:00 p.m., defense counsel had not responded to the proposed stipulation. Although the defendant was provided with the opportunity to file reply papers by June 30, 2010, the defendant elected not to file any reply papers. Oral argument on defendant's motion was held on July 2, 2010. For the following reasons, it is recommended that defendant's motion *in limine* to suppress statements made by him to law enforcement after he invoked his right to remain silent be granted.

## **PROCEDURAL BACKGROUND**

This Court had previously issued its Report, Recommendation and Order with respect to defendant's motion to suppress physical evidence, statements made by the defendant and "audiotape evidence" (Dkt. ##4 and 11). Dkt. #22. As set forth in

this Court's previous Report, Recommendation and Order, the defendant sought to suppress his statements on the grounds that the pursuit of the defendant by Buffalo Police Department officers was "unlawful" and accordingly, any evidence recovered and any statements made by the defendant, after the pursuit began was "fruit of the poisonous tree" and must be suppressed. See Dkt. ## 4, 11 and 22. For the first time in his motion *in limine*, the defendant argues that his statements made to law enforcement must be suppressed because the statements were obtained in violation of his Fifth Amendment rights. More specifically, after having been placed under arrest and read his *Miranda* warnings, the defendant, without equivocation, stated "I plead the fifth. I just did six years. I know whats up." Dkt. #8-2, p.5. Thereafter, the defendant was subjected to further custodial interrogation and made statements. As will be discussed in greater detail below, the defendant argues that any attempt to use those statements made by him after he unequivocally invoked his right to remain silent would be a violation of his Fifth Amendment rights.

## **FACTS**[1]

On February 8, 2009, Buffalo Police Department officers, responding to a call concerning shots fired, observed the defendant operating a vehicle at a high rate of speed and "fleeing from the location of the shooting." Dkt. #8, p.2. The Buffalo Police Department officers pursued the defendant's vehicle to the intersection of Bailey and

---

[1] The facts herein are taken from the Amended Government's Response to the Defendant's Omnibus Pretrial Motions (Dkt. #8) and the Government's Response to the Defendant's Motion in Limine (Dkt. #48).

Walden Avenues where it had momentarily stopped. *Id*. As Buffalo Police Department Lieutenant Kwiatkowski approached the defendant's vehicle, he observed what appeared to be a handgun in the defendant's right hand. *Id*. The defendant then drove off at a high rate of speed, nearly striking Buffalo Police Department Officer Cieply's patrol car. *Id*. (The defendant was subsequently issued a speeding ticket for traveling 75 miles per hour in a 30 miles per hour zone. Dkt. #8-2, p.4.) While the Buffalo Police Department officers continued to pursue the defendant's vehicle, Lieutenant Kwiatkowski and Lieutenant Bartoszewicz observed the defendant reach out the window of his vehicle and throw the handgun over the top of the vehicle with his left hand, nearly striking Lieutenant Bartoszewicz's patrol car. Dkt. #8, p.2. The defendant continued driving at a high rate of speed, but eventually stopped at 97 Gatchell Road, Buffalo, New York where he was arrested. *Id*. Buffalo Police Department Officer Crowley recovered the loaded weapon with one spent round in the area where the officers had observed the defendant throw it from the vehicle. *Id*. The defendant was arrested at 97 Gatchell Road and given *Miranda* warnings by Buffalo Police Department Officer Alvarez. In response, the defendant voluntarily stated, "I plead the fifth, I just did six years, I know whats up." *Id*.

Thereafter, between approximately thirty and forty-five minutes after his arrest, the defendant was transported to the C-District police station. Dkt. #48, p.3. While at the police station, Lieutenant Kwiatkowski asked the defendant, "when was the last time you were arrested?" The defendant replied, "I did six years for a gun." *Id*.

Lieutenant Kwiatkowski then asked the defendant the following series of questions and the defendant provided the following responses:

| | |
|---|---|
| Lt. Kwiatkowski: | I saw that other car chasing you. What was going on? |
| Defendant: | We were coming from the bar. |
| Lt. Kwiatkowski: | What bar? |
| Defendant: | Fosters. People were fighting there and started shooting. I took off and they started chasing me. It was a black Aurora. |
| Lt. Kwiatkowski: | I saw you throw the gun out the window. Did you have it for self defense? |
| Defendant: | Yeah. |
| Lt. Kwiatkowski: | You know I saw you throw it, so we're past that already right? |
| Defendant: | Yeah, you're right. I'm not trying to be disrespectful, but I'm done talking. I'll just take my time and roll. I'm not a snitch or giving any statements." |

*Id*. at pp.3-4.

In opposition to the defendant's motion *in limine*, the government asserts that "Lt. Kwiatkowski's tone during this exchange with the defendant was conversational and at no time did he raise his voice, threaten, intimidate or coerce the defendant. Lt. Kwiatkowski was also aware that Officer Alvarez informed the defendant of his right to remain silent but did not know that the defendant had stated, 'I plead the fifth' or otherwise indicated that he did not want to speak with the police." *Id*. at p.4.

## DISCUSSION AND ANALYSIS

In *Miranda v. Arizona*, the United States Supreme Court created a procedural mechanism with the purpose of establishing a prophylactic safeguard that would protect a defendant from the coercive nature of custodial interrogation and preserve his Fifth Amendment privilege against self-incrimination. However, before the requirements of *Miranda* come into play, there must be a form of "custody" of the person to be interrogated which "custody" amounts to the deprivation of "freedom of action in any significant way." *Miranda v.* Arizona, 384 U.S. 436, 444 (1966); *Thompson v. Keohane*, 516 U.S. 99, 100-101 (1995); *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998); *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004). The defendant bears the burden of proving custody. *See United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984). In the case at bar, there is no dispute, that at the time the defendant made any statements to law enforcement, he was in custody.

It is equally undisputed that immediately following his arrest, the defendant was given *Miranda* warnings by Buffalo Police Department Officer Alvarez at 97 Gatchell Road, and thereafter voluntarily stated, "I plead the fifth, I just did six years, I know whats up." There has been no suggestion by either party that the defendant's invocation of his right to remain silent was anything other than explicitly clear and unequivocal. At this point in the analysis, it is clear to this Court that the principles recently articulated by the United States Supreme Court on June 1, 2010 in its decision in *Berghuis v. Thompkins* have been satisfied, *to wit*, that a suspect who, after having

been given his *Miranda* warnings, wishes to invoke his right to remain silent, must do so unambiguously. *Berghuis v. Thompkins*, 560 U.S. \_\_\_, 130 S.Ct. 2250 (June 1, 2010). Stated another way, the decision of the suspect in *Berghuis* to remain largely silent throughout two hours and forty-five minutes of interrogation after having been read his Miranda warnings did not constitute an unambiguous invocation of his right to remain silent and therefore, his voluntary statement to the police was admissible. Unlike the suspect in *Berghuis*, after having been given his *Miranda* warnings, the defendant immediately and expressly stated, "I plead the fifth."

Once the defendant unambiguously stated, "I plead the fifth," the principles as articulated in *Miranda*, *Michigan v. Mosley*, 423 U.S. 96 (1975) and later in *Edwards v. Arizona*, 451 U.S. 477 (1981) govern and any interrogation should have immediately ceased. *Miranda*, 384 U.S. at 474. In *Michigan v. Mosley*, the Supreme Court noted that *Miranda* distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney. We are not concerned with the issue of attorney representation in the present case.

> As articulated in *Miranda*,
>
> [o]nce warnings have been given, the subsequent procedure is clear. **If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.** Without the

> right to cut off questioning, the setting of in-custody
> interrogation operates on the individual to overcome free
> choice in producing a statement after the privilege has been
> once invoked.

*Mosley,* 423 U.S. at 101, *citing, Miranda*, 384 U.S. at 473-474 (emphasis added). The Supreme Court went on to state: "'fully effective means . . . to notify the person of his right of silence and assure that the exercise of the right will be scrupulously honored.'" *Id. at* 103 (1975), *citing, Miranda*, 384 U.S. at 479. In the instant case, the government argues that, "[o]nce the officers issued <u>Miranda</u> warnings to the defendant, he professed that he was quite familiar with his rights due to his criminal history. The officers then 'scrupulously honored' the defendant's invocation of his right to remain silent while at the scene of the arrest." Dkt. #48, p.6. Notably, the government's claim that the officers "scrupulously honored" the defendant's invocation of his right to remain silent is limited only to the officer's conduct "while at the scene of the arrest" and not while at the C-District police station where he was in continued police custody following his formal arrest.

Notwithstanding the foregoing, after thirty to forty-five minutes, undeniably an interval of time that was extremely short in duration, the defendant was taken to the C-District police station, and at that point, Lieutenant Kwiatkowski "approached the defendant and engaged him in conversation." *Id*. Although the government fails to even acknowledge yet another recent United States Supreme Court decision decided February 24, 2010, namely, *Maryland v. Shatzer*, 599 U.S. \_\_\_, 130 S.Ct. 1213 (2010), there can be no dispute that the thirty to forty-five minute interval of time in the instant

case does not constitute a sufficient break in custody for *Miranda* purposes. The Court in *Shatzer* held that a minimum period of two weeks in the break of custody of a suspect would be required before custodial interrogation could be resumed once *Miranda* warnings had been given to the suspect. *Id*. at 1223; *see also*, *Edwards v. Arizona*, *supra*.

In its opposition to the defendant's motion, the government advances two equally unpersuasive arguments, both of which reflect a clear misunderstanding of the governing principles of law as they relate to custodial interrogation and the application of *Miranda*. First, the government suggests that Lieutenant Kwiatkowski's ignorance of facts, *to wit*, that the defendant after having been read his Miranda warnings by Officer Alvarez, unequivocally stated, "I plead the fifth," somehow excuses Lieutenant Kwiatkowski's subsequent interrogation of the defendant in direct violation of his Constitutional rights. As the United States Supreme Court stated in *Arizona v. Roberson*, 486 U.S. 674, 687 1988),

> Finally, we attach no significance to the fact that the officer who conducted the second interrogation did not know that respondent had made a request for counsel. In addition to the fact that Edwards [Edwards v. Arizona] focuses on the state of mind of the suspect and not of the police, custodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel. In this case respondent's request had been properly memorialized in a written report but the officer who conducted the interrogation simply failed to examine that report. Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different

> law enforcement authorities are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists. The police department's failure to honor that request cannot be justified by the lack of diligence of a particular officer.

*Arizona v. Roberson*, 486 U.S. 674, 687 1988); *cf. Giglio v. United States*, 405 U.S. 150, 154 (1972). Thus, under the principles articulated by the United States Supreme Court in *Arizona v. Roberson*, the knowledge of Officer Alvarez is imputed to Lieutenant Kwiatkowski and all other officers involved in the investigation. Accordingly, the government cannot hide behind Lieutenant Kwiatkowski's purported ignorance of the facts and avoid suppression of the defendant's statements.

Second, the government asserts that Lieutenant Kwiatkowski approached the defendant and engaged him in conversation and that because Lieutenant Kwiatkowski's tone was calm and conversational and that he immediately ceased the interrogation when the defendant stated, "I'm done talking . . . I'm not . . . giving any statement," the defendant's statements are admissible against him at trial. Contrary to the government's suggestion, the fact that it was Lieutenant Kwiatkowski who approached the defendant underscores the impropriety of the entire exchange. As the United States Supreme Court made clear in *Edwards v. Arizona*, any "further communication, exchanges, or conversations with the police" that the suspect himself initiates, are perfectly valid, but the converse is not, however, true. *Edwards v. Arizona*, 451 U.S. at 485. Finally, the fact that the government claims that the exchange between the defendant and Lieutenant Kwiatkowski may have been conversational and Lieutenant Kwiatkowski's tone remained calm is wholly irrelevant to the issue before

this Court. The questioning of the defendant by Lieutenant Kwiatowski was custodial interrogation which by the very nature of the questions, Lieutenant Kwiatkowski knew of should have known, were intended to elicit incriminating evidence from the defendant in violation of his Fifth Amendment rights. *Rhode Island v. Innis*, 446 U.S. 291 (1980) ("[T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").

Accordingly, for the foregoing reasons, it is the recommendation of this Court that the defendant's statements to law enforcement after he had unequivocally and unambiguously invoked his right to remain silent must be suppressed.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:  Buffalo, New York
         July 6, 2010

                                            *s/ H. Kenneth Schroeder, Jr.*
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**